**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **FRANK L. GAYDOS,** | § | |
| **TDCJ-CID No. 515137,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-08-028** |
| | § | |
| **BRAD LIVINGSTON, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Frank L. Gaydos, an inmate of the Texas Department of Criminal Justice - Correctional

Institutions Division (TDCJ-CID), has filed a civil rights complaint under 42 U.S.C. § 1983, against

TDCJ-CID officials alleging he was wrongly accused of disciplinary infractions, denied of due

process rights in administrative disciplinary hearings, and held under unlawfully restrictive

conditions.  Gaydos has also submitted a Motion for a Preliminary Injunction and a Motion for

Appointment of Counsel.  The Court will deny the motions and dismiss this action as frivolous

pursuant to 28 U.S.C. § 1915(e).

**I. Claims and Allegations**

Gaydos complains of two incidents in which he was accused of threatening to harm TDCJ-

CID officials at the TDCJ-CID Stevenson Unit.  The first incident stemmed from a confrontation

with a laundry officer over the ill fitting clothing that had been issued to him on or about July 30,

2007.  *See* Dkt. No. 1, at 7; Dkt. No. 9 at 1-2.  According to Gaydos, the laundry officer refused to

comply with another officer's instructions to issue Gaydos a clean pair of pants.  Dkt. No. 9, at 2.

Instead, the laundry officer ordered a shake-down of Gaydos's cell where extra clothing was found.

Dkt. No. 9, at 2.  Gaydos insists that the clothing belonged to his cell mate but the officer charged

him with an infraction. *Id.* Apparently, the confrontation escalated to the point where Gaydos began

making comments about guards which were construed to be threats. *See id.* at 3. On August 3, 2007,

he was formally charged with threatening an officer.

Gaydos claims that his comments were taken out of context and that documents were

falsified in order to trump up the charges against him. Gaydos was placed in pre-hearing detention

where he was not allowed to see his parents on August 4, 2007. *Id.* Gaydos's disciplinary hearing

took place on August 9, 2007. Defendant Captain Wally Rodriguez was the hearing officer.

Defendant Melissa Gomez served as Gaydos's counsel substitute.

Gaydos pled not guilty. He alleges that he requested witnesses in his behalf but they were

not permitted to attend the disciplinary hearing although he was allowed to submit their written

statements in which they attested that Gaydos had not threatened anyone. Dkt. No. 9 at 3. Defendant

R. McMurray, the charging officer, testified by phone that she heard Gaydos describing an assault

on an officer. *Id.* at 4. Gaydos contends that McMurray's statement failed to implicate him since

it lacked any detail concerning who Gaydos was talking about or to whom he directed the statement.

Nonetheless, Rodriguez found Gaydos guilty and Gaydos received the following punishments:

demotion to L-1 classification; 15 days of solitary confinement; 45 days of recreation restriction;

45 days of commissary restriction; and forfeiture of one year of phone call and visitation privileges.

*Id.* at 6. The unit adjustment committee, which included Warden Kelvin Scott, another defendant,

assigned Gaydos to medium custody. *Id.*

The second incident involving a supposed threat stemmed from an August 17, 2007, meeting

with counsel substitute Gomez in order to review and appeal the outcome of the August 9 hearing.

Dkt. No. 9, at 7. Gomez told Gaydos that the charging officer's testimony was missing due to a

2

recorder malfunction, but she assured him that she had taken notes of the hearing which would help

him with his appeal. *Id*. Gomez then asked Gaydos to sign a document that he had been notified

about the missing testimony. *Id*. at 8. However, Gaydos requested that Gomez write down what she

had heard before he signed the document. Gomez responded that she would write it down later and

send it to him. Apparently dissatisfied with the response, Gaydos stated that he wanted to know

what he was signing and made a remark, purportedly in jest, "Don't make me hold this [the

document] hostage." *Id*. Gomez, becoming exasperated, added a statement to the document. She

later filed a report accusing Gaydos of threatening to harm her. *Id*. at 9.

Gaydos was placed in pre-hearing detention and given a copy of the report in which Gomez

stated that he threatened to take her hostage. *Id.* Gaydos told his new counsel substitute, Linsi

Perez, that he wanted to call Tammy Cochran as a witness because she had been present during his

meeting with Gomez. *Id*. at 10. Captain Rodriguez was the hearing officer at the disciplinary

proceeding held on August 21, 2007. He denied Gaydos's request to call Cochran as a witness even

though Gomez mentioned that she was present during the incident. *Id*. Gaydos questioned Gomez

regarding what he specifically said and how he behaved during the incident. Although Gomez

admitted that Gaydos had not engaged in any aggressive behavior, she asserted that she understood

that Gaydos meant to threaten her. *Id*.

Captain Rodriguez found Gaydos guilty based on Gomez's testimony and ordered the

following punishments: reduction to Line Class 3; 45 days of recreation restriction; 45 days of

commissary restriction; 15 days of solitary confinement; and a loss of 730 days of good time credits.

*Id*. at 11. On August 24, 2007, an Administrative Segregation Classification committee, headed by

Warden Scott, assigned Gaydos to Administrative Segregation based in part on a recommendation

made by Captain Rodriguez. *Id*. at 11-13.  Subsequent committees determined that Gaydos should

remain in Administrative Segregation due to his aggressive behavior. *Id.* at 13-15.  On September

14, 2007, Gaydos was removed from the Stevenson Unit and arrived at the Allred Unit on September

19, 2007. *Id*. at 15-16.  He asserts that some officials have acknowledged that he was the victim of

trumped up charges but his Administrative Segregation assignment was continued.  Gaydos also

complains about the conditions in Administrative Segregation.

 While at Allred, Gaydos filed an appeal challenging the disciplinary proceeding in which he

was accused of threatening to take Gomez as a hostage. Dkt. No. 4 at 1.  He complained that he was

denied a witness statement which would have supported his case.  He also complained of procedural

errors regarding his statement, "I could take you hostage." *Id*.  Gaydos argued that the statement

could not be construed as a threat, but merely a statement of fact. *Id*.  The appeal was denied on the

basis that the disciplinary charge and finding of guilt were supported by a preponderance of the

evidence. *Id.* at 2. Gaydos also appealed his other disciplinary proceeding and argued that there was

no specific conduct shown that could be considered threatening behavior. *Id.* at 3.  That appeal was

also denied on the basis that there was evidence to support the finding of guilt.

 Gaydos is currently in medium custody after having served a year in administrative

segregation. *See* Dkt. No. 10; Dkt. No. 8.  He complains that he is subject to restrictions not

imposed on inmates in minimum custody, his prior status. Dkt. No. 9 at 6.  He also complains that

he has been subject to an increased risk of physical injury and has suffered mental stress due to lack

of access to his family. Dkt. No. 8, at 2.  He seeks an order returning him to general population,

expunging his record, and awarding compensatory and punitive damages. Dkt. No. 1, at 7.  He has

also filed a Motion for a Preliminary Injunction compelling the defendants to restore his privileges

and transfer to a unit near his family so that he may be able to visit with them.  Dkt. No. 8, at 3.

## II. Analysis

The complaint in this action concerns the prison administration's handling of disciplinary

proceedings against an inmate who has been charged with breaking the prison's rules.  Such

allegations by a state prisoner are not actionable as a civil rights claim unless the disciplinary

measures taken against the prisoner inflict deprivations that are atypical and significant in relation

to the ordinary incidents of prison life.  *Sandin v. Conner*, 115 S.Ct. 2293, 2300 (1995).  Given the

difficulties in maintaining order in a prison, the courts are hesitant to interfere with the prison

administration's handling of its disciplinary affairs.  *See Rhodes v. Chapman*, 101 S.Ct. 2392, 2400

n.14 (1981) ("[A] prison's internal security is peculiarly a matter normally left to the discretion of

prison administrators.");  *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984).

Gaydos argument that he did not receive a fair hearing has no legal support.  Prison

disciplinary proceedings differ from criminal prosecutions, and a prisoner in such proceedings is not

entitled to the rights due a defendant in a criminal trial.  *Wolff v. McDonnell*, 94 S.Ct. 2963, 2975

(1974).  His rights are limited to the following: (1) a written notice of the charges given at least

twenty-four hours before a scheduled hearing; (2) in front of an impartial tribunal; (3) where the

inmate may present evidence in his behalf, including the qualified right to call witnesses; and (4)

a written statement regarding the evidence relied upon and the reasons behind the disciplinary action

taken.  *Id*. at 2978-79.

Gaydos was given advance notice of the charges and his cases were heard by Captain

Rodriguez who was not a party to the incident.  Although Gaydos was not allowed to present all of

5

his witnesses, he was permitted to present evidence in his behalf and Rodriguez did have discretion to exclude witnesses.  *See Thomas v. Estelle*, 603 F.2d 488, 490 (5th Cir. 1979).   Further, Rodriguez's decisions were not arbitrary and no constitutional violation has been shown because there was some evidence to support the findings of guilt.  *Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998).  Moreover, the punishments and conditions imposed against Gaydos do not implicate a constitutional violation.

In this instance, Gaydos was demoted, temporarily denied certain privileges, placed in solitary confinement for 15 days, and thereafter placed in administrative segregation.  He also forfeited good time credits in one proceeding.  Gaydos's demotion in behavior status is not actionable in a civil rights proceeding because he does not have a constitutional right to a particular classification.  *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000).  Further, Gaydos's placement is of little or no consequence because it does not alter his release date.   *Madison v. Parker*, 104 F.3d 765, 769 (5th Cir. 1997); *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995) (" . . . it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional liberty status."). Moreover, a prisoner does not have a constitutional right to be released prior to the expiration of his sentence. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 99 S.Ct. 2100 (1979); *Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998).   Gaydos's brief detention before his hearing does not implicate due process concerns.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Such placement and its attendant restrictions serves a legitimate purpose in preventing further disruptions of discipline and limiting the risk of harm to both prisoners and officials.  *Id*. (citing *Hewitt v. Helms*, 103 S.Ct. 864, 869-71 (1983)).  Likewise, his two 15 day stays in solitary

confinement are not constitutional violations. *See Orellana*, 65 F.3d at 32. Finally, Gaydos's complaints of being unable to visit with his family fail to support a claim because he has no constitutional right to visitation privileges. *Berry v. Brady*, 192 F.3d 504 (5th Cir. 1999).

The loss of good time credits is not actionable either. If Gaydos actually lost good time and his date of release was negatively impacted by the disciplinary proceeding, his civil rights complaint must be dismissed because the claim could be reviewed only in a habeas corpus proceeding. *Edwards v. Balisok*, 117 S.Ct. 1584, 1589 (1997); *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998). He must file a habeas petition if he seeks an accelerated release from prison. *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (citing *Serio v. Members of La. Bd. of Pardons*, 821 F.2d 1112 (5th Cir. 1987)). If the loss of good time has caused Gaydos's release to be delayed, he has not shown that the hearing officer's decision has been overturned. Consequently, the claim would be subject to dismissal. *Edwards*, 117 S.Ct. at 1589. If the loss of good time does not affect Gaydos's release date, the claim would be dismissible because Gaydos could not demonstrate how the sanction has adversely affected him. *See Madison*, 104 F.3d at 769.

Gaydos's disappointment with the outcome of his appeal is not actionable either. *Gieger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Jones v. North Carolina Prisoners Labor Union*, 97 S.Ct. 2532, 2544 (1977) (Burger, J., concurring) (applauding the adoption of grievance procedures by prisons, but expressly declining to suggest that such procedures are "constitutionally mandated"); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) ("A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not

give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.").

Finally, Gaydos's complaint regarding his current classification and its attendant restrictions is not actionable because prison authorities have broad discretion in classifying their prisoners. *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998).  Gaydos states that he has been told that he is in restrictive custody because he presents a threat to security.  This is sufficient to justify Gaydos's placement.  *See Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996).  Gaydos also states that his classification status was reviewed periodically by a classification committee. Such procedures are constitutional.  *See Hewitt*, 103 S.Ct. at 104.  Gaydos's continued assignment to restricted custody is a foreseeable consequence of legal incarceration and does not support a civil rights violation claim. *See Hernandez v. Velasquez*, 522 F.3d 556 (5th Cir. 2008).

Gaydos is a prisoner and has moved to proceed as a pauper.  In such proceedings, the court may dismiss a complaint as frivolous if it has no legal basis.  *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).  This action will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e).

## III. <u>Application to Proceed In Forma Pauperis</u>

Gaydos's Application to Proceed In Forma Pauperis will be granted.  Gaydos is not required to prepay the entire filing fee, but he is obligated pay the filing fee pursuant to the provisions of 28 U.S.C. § 1915(b).  The TDCJ Inmate Trust Fund shall deduct 20 percent of each deposit made to Gaydos's account and forward the funds to the Clerk of this court on a regular basis, in compliance with 28 U.S.C. § 1915(b)(2), until the entire filing fee ($ 350.00) has been paid.

## IV. Other Motions

Gaydos has filed a Motion for Preliminary Restraining Order (Dkt. No. 8) in which he complains that he has been kept in administrative segregation under less than ideal conditions. Prisons are not meant to be comfortable. *Wilson v. Seiter*, 111 S.Ct. 2321, 2324 (1991), *citing Rhodes v. Chapman*, 101 S.Ct. 2392, 2400 (1981). Gaydos's continued placement in administrative segregation is not a basis for an actionable claim because it is a part of ordinary prison life. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir 1998). In addition, subsequent pleadings indicate that Gaydos has been released from administrative segregation. *See* Dkt. No. 10, at 1. The motion will be denied because Gaydos has failed to show that he is entitled to injunctive relief. *See Women's Med. Ctr. v. Bell*, 248 F.3d 411, 418-420 (5th Cir. 2001).

Gaydos has also filed a Motion for Appointment of Counsel (Dkt. No. 2) in which he asserts that he needs an attorney to assist him in investigating and researching his case. There is no constitutitonal right to a court appointed attorney in a civil rights case. Jackson v. Cain, 864 F.2d 1235, 1242 (5th Cir. 1989). The issues in this case are neither peculiar nor are they complex. They merely concern two disciplinary proceedings and placement in administrative segregation. The law is clear on these issues and presence of counsel would not alter this court's determination that Gaydos has failed to assert a claim that has any legal basis. Therefore, the motion will be denied. *See Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir.1982).

## V. Conclusion

The court **ORDERS** the following:

1.   This cause of action, filed by Inmate Frank L. Gaydos, TDCJ-CID No. 515137, is **DISMISSED** as frivolous. 28 U.S.C. § 1915(e).

2.   The Application to Proceed In Forma Pauperis (Dkt. No. 3) is **GRANTED**.

3.      The Texas Department of Criminal Justice - Institutional Division Inmate Trust Fund is **ORDERED** to collect the filing fee and forward it to the court as provided in this Memorandum Opinion and Order.

4.      The Motion for Appointment of Counsel (Dkt. No. 2) is **DENIED**.

5.      The Motion for Preliminary Injunction (Dkt. No. 8) is **DENIED**.

6.      The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties; the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas 78711, Fax Number (512) 936-2159; the TDCJ-CID Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629; and the Pro Se Clerk's Office for the United States District Court, Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas 75702.

**SIGNED** on this 10th day of March, 2009.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE